## PATTEN v. FINDLEY.

*(Supreme Court, General Term, Fifth Department. March, 1892.)*

EJECTMENT—EVIDENCE.

In ejectment it appeared that plaintiff's lands adjoined those of defendant on the easterly, southerly, and westerly sides; that a dispute arose about the division lines, and they employed a surveyor who ran the lines so as to give defendant a narrow strip of land on the easterly and southerly side, but took from him a piece on the westerly side; that the parties agreed to abide by the survey, and move their fences on the new line, which was done on the easterly and southerly sides; but defendant refused to move his part of the fence on the western side, and em-

ployed the surveyor to resurvey the western line; that defendant then, against plaintiff's protest, placed his portion of the fence on this new line, which was 30 feet west of the other survey; and that plaintiff moved his own fence back on the western line, as it originally was, and brought this action to recover the land lying between the new fences and the old lines. *Held*, that plaintiff was entitled to a verdict.

Appeal from circuit court, Allegany county.

Ejectment by Orrin Patten against Thomas Findley. Verdict for plaintiff. Plaintiff appeals from an order setting aside the verdict, and granting a new trial. Order reversed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*E. E. & G. W. Harding,* for appellant. *H. H. Relya,* for respondent.

LEWIS, J. The parties were the owners of farming lands in the county of Allegany. The lands of the plaintiff adjoined those of the defendant upon the easterly, southerly, and westerly sides. There being an uncertainty about the division lines, a dispute arose between the parties, and they made an agreement to employ a surveyor to run the lines; and Mr. Henry Shallies was employed for that purpose. The lines of the survey of Shallies ran east and south of the easterly and southerly lines of defendant's farm, as theretofore occupied by him; giving to the defendant a narrow strip of land upon the easterly and southerly sides of his farm. The lines run by the surveyor upon the westerly side of defendant's farm took from him a piece of land theretofore occupied by him. Upon the completion of this survey the parties agreed to abide by it, and arranged to move their fences upon the new lines as thus established, and for that purpose divided the fences between them. They placed their fences upon the new lines upon the easterly and southerly sides of defendant's farm, and the plaintiff moved his portion of the fence upon the new line on the westerly side. The defendant neglected and refused to place upon the Shallies line that portion of the fence upon the westerly side of his farm allotted to him. The plaintiff served upon him a written notice to build his portion of that fence. The land set off to the plaintiff upon the westerly side of the defendant's farm deprived him of the use of a stream of water theretofore enjoyed by him. After being notified to build his fence the defendant again employed Shallies, and at defendant's request the surveyor ran the westerly line along an old stone fence that had been used as a line fence between the adjoining farms; and by this survey the line ran some 30 feet westerly of his first line. The defendant thereupon placed his portion of the westerly fence upon this new line. After the removal of the fence upon the southerly side of defendant's premises upon the line run by Shallies, defendant entered upon the land thereby assigned to him, and cut and carried away therefrom some hemlock trees. The plaintiff protested against the defendant's building the westerly fence upon Shallies' new line. He testifies: "I told him if he persisted in building the fence there, and held the land on both sides of me, I couldn't stand it; I would sue him. I gave him to understand he could not steal that land away from me without letting me know it. I told him he could not hold the land on both sides of me; it was unreasonable." The plaintiff employed a Mr. Minard, a surveyor, to run the lines between the farms, and his survey ran along the old lines, as the farm had been occupied before the Shallies survey; and the plaintiff thereupon placed his portion of the westerly fence upon the line as run by Minard, and brought this action to recover the land lying in between the new fences and the old lines of the farm. The defendant's answer did not deny the plaintiff's title to the lands claimed in the complaint, but denied that he wrongfully or unlawfully held the possession thereof from the plaintiff. The plaintiff recovered a verdict, which was set aside by the trial court upon the ground that the evidence failed to establish that the defendant ever entered upon the disputed lands upon the east side of his 50 acres, or ever exercised any dominion

by overt act, or by claiming the same, or ever refused to surrender the same, or denied the plaintiff's right to possession.

The arrangement by which the easterly fence was removed so as to include in the defendant's premises a strip of land upon the easterly side of his farm, the possession of which the plaintiff sought to recover in this action, was part of an entire agreement, by the terms of which the defendant was to surrender a piece of land upon the westerly side of his farm. He refused to carry out his agreement, and surrender this part of the land. It thereupon became his duty to at once surrender all that he had acquired under his arrangements with the plaintiff. This he neglected to do, and the plaintiff, as he had a right to do, brought this action. The defendant could not avail himself of the benefits secured to him by the contract, unless he was willing to perform upon his part. Refusing to carry out the agreement, he should have surrendered the possession of the premises acquired by him under the agreement. He had no better right to the piece of land upon the easterly side of his farm than a vendee would have under an executory contract to purchase the land; and when he refused to pay for it by surrendering the land assigned to the plaintiff upon the westerly side of the farm, his possession of the land assigned to him upon this easterly side became tortious, and he was not entitled to notice to surrender before bringing the action. But, if it should be held that he was entitled to notice, we think there was sufficient evidence to justify the jury in finding that the plaintiff had, in effect, given such notice, by the demands he made upon the defendant when he ascertained that the defendant was building his fence upon the second line run by Shallies. We think the plaintiff made a case entitling him to the verdict which he recovered, and that it was error to set aside the verdict, and the order appealed from should be reversed. The verdict, as rendered by the jury, was informal; but, as the order appealed from was not made because of any informality in the verdict, we do not pass upon this question, but leave the plaintiff to a correction of the verdict by such action as he shall be advised to take. The order appealed from should be reversed, with $10 costs and disbursements of the appeal. All concur.